UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

PRESSGOLD, INC. d/b/a AMUSITRONIX,

                         Plaintiff,

       - against -

STEPHEN HILLANBRAND, JOSEPH
PARNETT and WOW ENTERTAINMENT,
INC. d/b/a WOW! ENTERTAINMENT,

                       Defendants.

------------------------------------------------------------X

Civ. No.:

FILED
U.S. DISTRICT COURT
2015 FEB -6  PM 2: 57
S.D. OF N.Y.W.P.

**COMPLAINT**

# 15 CV    0910

*Plaintiff Demands
a Trial by Jury*

JUDGE SEIBEL

       The Plaintiff, PRESSGOLD, INC. D/B/A AMUSITRONIX ("Amusitronix"), by and

through its attorneys, Mitchell Pollack & Associates, PLLC, as and for a Complaint against the

Defendants, STEPHEN HILLANBRAND ("Hillanbrand"), JOSEPH PARNETT ("Parnett") and

WOW ENTERTAINMENT, INC. d/b/a WOW! ENTERTAINMENT ("WOW") (collectively

"the Defendants"), states and alleges as follows:

## NATURE OF ACTION

       1.     The Plaintiff seeks injunctive relief and the recovery of damages in connection

with the Defendants' deliberate and willful infringement of the Plaintiff's business name, service

and/or trademark, "Amusitronix" ("Mark"), through their unauthorized use and misleading

internet trafficking of the Mark, as well as Hillandbrand's conversion, hijacking and misuse of

the Plaintiff's Domain Names and corporate assets, and breach of his fiduciary duties to the

Corporation.

       2.     To avoid the inevitable confusion and deception of the public and to prevent the

irreparable harm being caused to the Plaintiff by the Defendants' manifest and intentional

attempt to trade on and/or convert Amusitronix's goodwill, the Plaintiff files this action for:  a)

trademark infringement, false designation of origin and/or unfair competition under the Lanham

Act ("Lanham Act"), 15 U.S.C. §1051 *et. seq.*; b) trademark dilution under 15 U.S.C. §1125(c);

c) cyber piracy and/or anti-cybersquatting pursuant to the Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(d); d) unlawful interception and disclosure of electronic communications pursuant to 18 U.S.C. §2511; and e) the related claims of trademark infringement, dilution, deceptive business practices, unfair competition, unjust enrichment and injury to business reputation under the statutory, consumer protection and common laws of the State of New York. The Plaintiff also files claims against the Defendant, Hillanbrand, individually for breach of fiduciary duty, conversion, tortious interference with business relations and usurption of corporate opportunities.

3.      The Defendants' unlawful activities are precisely the type of actions against which trademark, unfair competition and consumer protection laws were designed to protect, and the Defendants' willful, wanton and malicious misconduct supports an award of treble and/or punitive damages and any and all other appropriate relief pursuant to applicable state, federal and common laws that can be inferred from the facts set forth herein, including costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 in that the action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      This Court also has subject matter jurisdiction over this lawsuit pursuant to 15 U.S.C. §1121, 28 U.S.C. §1331 and 28 U.S.C. §1338 and supplemental jurisdiction over all of the state law claims pursuant to 15. U.S.C. §1367, under the principles of pendent jurisdiction.

6.      Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2) because the Plaintiff regularly conducts business within the Southern District of New York and a substantial part of the events or omissions giving rise to this claim occurred herein, including the

Defendants' acts and omission which have caused substantial confusion and deception among consumers in New York and irreparable injury to Amusitronix's invaluable reputation, online presence and goodwill.

## PARTIES

7.     The Plaintiff, Pressgold, Inc. d/b/a Amusitronix, is and was at all relevant times, a domestic corporation organized and existing under the laws of the State of New York with a principal place of business at 39 Shady Lane in the Town of Nanuet, County of Rockland, State of New York.

8.     The Corporation is in the business of, *inter alia,* developing electronic amusement equipment, virtual reality and sports simulators, and leasing that software and equipment to customers who typically use it at large corporate gatherings or functions, such as trade shows and industry events.

9.     WOW! is a foreign corporation duly organized and existing under the laws of the State of New Jersey with a last known principal place of business at 63 Veronica Avenue, Suite 2, Somerset, New Jersey 08873 in the County of Somerset, State of New Jersey.

10.     WOW! is a direct competitor of Amusitronix.  The goods and services provided by Amusitronix and WOW! are similar and both companies compete for the same customer base and trade show and industry events.

11.     Hillanbrand is an individual currently residing at 604 Guadalupe Road, in the Town of Keller, County of Tarrant, State of Texas.  Hillanbrand is, and/or was at all relevant times, a shareholder of Amusitronix and an employee of WOW!

12.     Parnett is an individual currently residing at 134 Castleton Road, in the Town of Princeton, County of Mercer, State of New Jersey.  Parnett is a principal of WOW!

## FACTUAL BACKGROUND

### The Formation of Pressgold, Inc. d/b/a Amusitronix:

13.     Michael Goldstein, the President and Chief Executive Officer of Amusitronix ("Goldstein"), and Robert Pressman ("Pressman"), the Vice President, Secretary and Treasurer of Amusitronix, formed the Corporation in 1997.

14.     Amusitronix is in the business of, *inter alia,* developing electronic amusement equipment and sports simulators and leasing that software and equipment to customers for use at large corporate gatherings and functions such as trade shows.  It is an event driven company doing business all over the country and travel is often required.

15.     Goldstein and Pressman agreed to act together concerning the management, operation and control of the Corporation and executed a Shareholder's Agreement, dated September 10, 1997, to that effect ("Agreement").

16.     As set forth in the corporate bylaws and the Agreement, Goldstein, was appointed the President and CEO of the Corporation and Pressman was appointed the Vice President, Treasurer and Secretary.

17.     Goldstein and Pressman have maintained the positions set forth above at all times hereinafter mentioned and during the commission of all the acts and omissions described herein.

18.     Pursuant to the Agreement, the shareholders of the Corporation are also employed as employees and paid a salary for the work they perform.

19.     Pursuant to the Agreement, the shareholders of the Corporation are required to provide full-time service to the Corporation and not provide service to any other company, organization, or institution, without the expressed written approval and consent of the Board of Directors, which at all times hereafter mentioned, consisted of Goldstein and Pressman.

**The Plaintiff Secures the Corporate Domain Names:**

20.      On or about January 13, 2000, Goldstein, on behalf of the Corporation, purchased and secured the domain name "Amusitronix.com" through third party registrar of record GoDaddy.com, Inc. and the Corporation's website was developed to encourage the sale and lease of its equipment.  The Corporation also maintains another website domain name "thevrguys.com" which was secured by the Corporation through GoDaddy.com, Inc. on or about August 25, 2006 (hereinafter collectively referred to as the "Domain Names").

21.      The corporate Domain Names were registered on behalf of the Corporation and are and were always corporate assets.  The websites and the Corporation's various social network profiles on Facebook, LinkedIn, etc. were intended to promote Amusitronix's business and the goods and services it provides as well as help Amusitronix grow.  Amusitronix's reputation, brand and goodwill was built with a significant online presence, positive customer feedback and exceptional search engine performance.

**The Plaintiff Hires Stephen Hillanbrand:**

22.      In or around 2001, Goldstein and Pressman, hired the Defendant Hillanbrand, as an "Event Manager" for Amusitronix.  He became a valued employee of the Corporation.

23.      In 2003, as an incentive to continue working hard and devoting himself to helping Amusitronix grow, Goldstein and Pressman rewarded Hillanbrand with a one-third interest in the Corporation.

24.      At all relevant times thereafter, Goldstein, Pressman and Hillanbrand were each one-third shareholders and functioned as at-will employees of Amusitronix.  The relationship of the shareholders of a closely-held Corporation is a fiduciary one; thus, Hillanbrand owed the Plaintiff, Goldstein and Pressman a fiduciary duty to act in the best interests of the Corporation, in the highest obligations of fair dealing, in the exercise good faith and diligence in the

administration of the affairs of the Corporation and in the use and preservation of its property, assets and corporate opportunities.

25.    Goldstein and Pressman had previously made capital contributions and invested personal funds to establish and develop Amusitronix, including personally guaranteeing debt of approximately $300,000.00.  Hillanbrand's one-third interest, however, was purely "sweat equity" and a gift.  He never contributed any capital or assumed any personal debt in furtherance of the Corporation.

26.    During his employment with Amusitronix, Hillanbrand was promoted to the position of "Director of Sales" and he functioned as the Corporation's primary salesperson under the direct supervision of Goldstein and Pressman.  He also managed an equipment warehouse and attended client events on the Corporation's behalf.

27.    Under the supervision of Goldstein and Pressman, Hillanbrand was directed to purchase the Corporation's cellular phones, register the Corporation's software system and enroll the Corporation in Google "AdWords".

**Hillanbrand's Job Performance Dramatically Declines:**

28.    In or about 2010, Hillanbrand's job performance began to decline.  When he moved from St. Louis to Texas in 2010, the Corporation permitted him to set up an equipment warehouse/office ("Warehouse") in Dallas for convenience purposes.  Goldstein and Pressman came to learn that this Warehouse was being mismanaged and he rarely visited the premises.  He had poor relationships with his staff and since he was not present to supervise them, the employees began taking advantage of the Corporation.

29.    In or about July 2010, registration of the domain name "Amusitronix.com" was due to expire.  As such, Goldstein instructed Hillanbrand to renew the ownership rights to Amusitronix.com, as a domain name under Pressgold, Inc.'s account.  Hillanbrand was required

to identify the Plaintiff as the owner and registrant of the new domain name and he was provided with a corporate credit card to repurchase the renewal rights of Amusitronix.com under the Corporation's name.

30.     Unbeknownst to Goldstein and Pressman, and without the authority or consent of the Board of Directors, however, Hillanbrand did not renew "Amusitronix.com" under the ownership of Pressgold, Inc. but instead renewed the registration of the domain name by securing it under Hillanbrand's name personally.

31.     On or about June 17, 2013, Hillanbrand announced that that he no longer wished to attend corporate events, preferring to concentrate on sales. Hillanbrand's decision put a significant strain on the Corporation because Goldstein and Pressman were already handling all other aspects of the business including: managing operations; traveling to and supervising/running events all over the country; supervising staff and overseeing purchasing; as well as all other day to day activities of the Corporation.

32.     On or about August 25, 2013, unbeknownst to Goldstein and Pressman and without permission of the Board, Hillanbrand also renewed the ownership rights to the domain name "thevrguys.com" to himself personally, despite it being a corporate asset.

33.     In 2013, due to his decision to no longer attend client events and handle equipment-warehousing duties, Goldstein and Pressman flew to Dallas, rented a truck, and moved all the corporate equipment to a warehouse location in Houston. This required hiring another warehouse manager and taking on additional payroll.

34.     Shortly thereafter, Hillanbrand became less available to clients and corporate employees and excuses as to why he failed to return client calls and emails, or participate in Corporation conference calls between the shareholders, became more and more frequent.

35.     Hillanbrand began removing himself from the day-to-day operations of the Corporation and missed dozens of weekly conference calls, proclaiming repeatedly that he only wanted to focus on sales.  Goldstein and Pressman possess numerous emails from Hillanbrand documenting his excuses for failing to conduct conference calls or perform routine job related tasks.

**Sales Begin to Plummet and Hillanbrand Grows More Inaccessible:**

36.     Soon, sales began to plummet and Hillanbrand grew more inaccessible.  Goldstein and Pressman had no choice but to pick up his slack or else face going out of business.

37.     Goldstein and Pressman soon began to suspect that Hillanbrand had ceased regularly performing his duties and devoting full-time hours to his position as the Director of Sales for Amusitronix.

38.     Upon information and belief, Hillanbrand's proclaimed "inability" to attend events for Amusitronix was due to his taking on other employment during regular business hours to the detriment of the Corporation.

39.     During September 2014, it was confirmed that Hillanbrand was spending his days working for various other employers and not generating sales for Amusitronix.  They learned that he was working at a "Kroger" grocery store in Texas during Amusitronix's regular business hours and that since at least 2011, he had held the position of Promotion's Manager for Celio's Chicago Style Pizza.

40.     These additional jobs were clearly conflicting with his ability to perform as the "Director of Sales" for Amusitronix and hurting the Corporation's ability to generate income and sales leads.

41.     The Corporation's sales had decreased from the approximately $1.5 million dollar range during the years 2006 to 2008, down to the $1 million dollar range from 2009 to 2011,

then to under a million after Hillanbrand apparently took the position with Celio's in or about 2011, and down to around $500,000 in 2014 after it is assumed Hillanbrand started working full-time at the grocery store.

42.      Records indicate that during the period of August to September 2014 (when Hillanbrand was apparently working full-time for Kroger), Hillanbrand had only entered five (5) quotes into the corporate computer system.  In comparison, after Goldstein took over this responsibility, approximately 100 quotes a month began being entered.

**Hillanbrand's Termination and Retaliatory Behavior:**

43.      As a result, on September 29, 2014, Goldstein and Pressman agreed that it was necessary to terminate Hillanbrand's at-will employment with the Corporation.  They sent Hillanbrand an email notifying him that he was being relieved of his duties as an employee of Amusitronix, so that he may be free to "pursue other income opportunities on a full time basis, to help support [his] family."

44.      His termination as an employee was a business decision that was made to keep the company afloat and was not intended to affect his status and/or fiduciary duties to the Corporation as a shareholder.

45.      However, on or about October 1, 2014, Hillanbrand retaliated against Goldstein and Pressman for dismissing him as an employee by hijacking the Corporation's website and disabling the Corporation's phone and email system.  This effectively shut down and sabotaged the business and brought Amusitronix's ability to generate sales to a screeching halt.  It is suspected that this destructive act caused significant financial damage to the Corporation.

46.      This is when Goldstein and Pressman learned that in June 2010 and August 2013, when Hillanbrand was directed by Goldstein to renew the corporate Domain Names and charge

the fees to the corporate credit card, he actually took control over and converted these Domain Names and registered them to himself, personally.

47.     This restricts the Plaintiff because they are now unable to make any changes to their own websites, including, *inter alia,* the addition/deletion of new goods and services being offered; the addition/deletion of employee positions and contact information, such as Hillanbrand's cell phone number and email address; and/or otherwise correcting any errors that are noticed on the website.  Hillanbrand is holding the Plaintiff's websites hostage and causing significant damage to the Corporation, its reputation, brand and online presence.

48.     It was also discovered that Hillanbrand was offering the Corporation's website domain name, Amusitronix.com, up for auction on GoDaddy.com for $99,999.00, without their knowledge, authority or consent.

49.     Upon learning of this unauthorized transfer of corporate assets and the pending auction, Goldstein and Pressman demanded that Hillanbrand immediately transfer the Domain Names back to the Corporation.  To date, however, he has neglected and/or refused to do so.

50.     Hillanbrand also unlawfully took control of the Corporation's telephone system by changing the passwords and access codes.  This seizure of the phone and email system prevented the Corporation from communicating with its personnel, clients and potential clients and he intended it to cause serious financial damage to Amusitronix.

**The Plaintiff Retains Counsel to Combat the Retaliation:**

51.     On or about October 8, 2014, the Corporation retained counsel in an attempt to prevent further retaliatory conduct and to seek a return of the corporate assets.  On October 9, 2014, counsel sent a letter to Hillanbrand formally demanding the return of the corporate Domain Names and other corporate assets.

52.     On or about October 16, 2014, Hillanbrand's counsel responded to the Corporation's demand and falsely accused Goldstein and Pressman of ousting Hillanbrand from the Corporation.  Counsel further requested access to the corporate books and records.

53.     On October 17, 2014, the Corporation advised Hillanbrand that Amusitronix's books and records would be made available for inspection, at the corporate office, at Hillanbrand's convenience.

54.     Further communications were exchanged in an attempt to resolve the matter, but Hillanbrand continued to withhold the Domain Names and corporate assets from the Corporation and prevent them from modifying the content of the websites.

55.     During this period, Goldstein and Pressman also discovered that Hillanbrand had taken a job with WOW!, a direct competitor of Amusitronix, and that he was using their corporate leads and client sales lists to poach clients of Amusitronix, in furtherance of his employment with WOW!  Parnett is the principal of WOW! and upon information and belief, he supervised Hillanbrand's day-to-day responsibilities and employment with WOW!

56.     It was also revealed through Hillanbrand's social media profiles that he had interfered with the business relationship between Amusitronix and its customer, ABC Television, and usurped a corporate opportunity away from Amusitronix by contracting for an event on the daytime television program, The View, for WOW!  This was an event/job that was similar to one that Hillanbrand had sold to ABC and The View, in 2009, for Amusitronix, so Hillanbrand was fully aware of Amusitronix's relationship with ABC.

57.     Goldstein and Pressman then obtained information that Hillanbrand was actively soliciting current Amusitronix customers and suggesting that they call him at WOW! instead of doing business with Amusitronix.

58.     As a result of Hillanbrand's refusal to return the Corporation's Domain Names and assets, his poaching of corporate clients for the benefit of a direct competitor, and the looming threat of future business losses stemming from Hillanbrand's retaliatory conduct, the Corporation, purchased the Domain Name "Amusitronics.com" on behalf of the Corporation and mirrored the website's contents from Amusitronix.com.

59.     The Corporation's decision to mirror the Amusitronix.com website on the new domain name was in response to Hillanbrand's wrongdoing and was not a preferable business practice since it interfered with the goodwill and brand recognition that Amusitronix had developed throughout the 14 years that the website has been active and ultimately led to and continues to lead to a loss of sales and customers as well as confusion in the marketplace.

**Hillanbrand Attempts to Leverage a Buyout:**

60.     Upon information and belief, in anticipation of the Corporation filing claims against Hillanbrand for breach of his fiduciary duties to Amusitronix, conversion and other applicable business torts and to attempt to leverage a buyout of his shares, Hillanbrand filed a frivolous Petition to dissolve the Corporation under Business Corporation Law §1104-a in the Supreme Court of the State of New York, County of Washington under Index. No: 24029-2014 ("BCL §1104-a Proceeding"). The Corporation, Goldstein and Pressman were served with this frivolous Petition and an Order to Show Cause seeking a preliminary injunction on or about October 18, 2014.

61.     The Corporation, Goldstein and Pressman have been staunchly defending the BCL §1104-a Proceeding and even filed their own motion for a preliminary injunction and confidentiality order seeking to enjoin and restrain Hillanbrand from further retaliatory and destructive behavior and protect the confidentiality of any financial documents, books and

12

records the Corporation was ordered to produce, since Hillanbrand now works for a direct

competitor of Amusitronix.

62.     On or about January 14, 2015, the Honorable Stan. L. Pritzker signed a temporary

restraining order ("TRO") against Hillanbrand, which ordered that:

> pending the hearing and determination in connection with [the Corporation,
> Goldstein and Pressman's] application for a preliminary injunction, [Hillanbrand],
> his agents, representatives, attorneys and anyone else acting on his behalf, are,
> except by further order of this Court, temporarily enjoined and restrained from:
>
> 1)     selling, canceling, auctioning, dissipating, transferring, encumbering,
> borrowing from or against, gifting and/or otherwise disposing of, interfering with,
> shutting down or destroying any corporate property or assets owned and/or
> acquired by the Parties since the formation of the Corporation, whether such
> corporate property is controlled or maintained by the Parties independently,
> jointly or with any other third party or entity, including but not limited to:  the
> physical assets of the Corporation, equipment, cell phones, computer hardware or
> software programs, client lists, the corporate website, email system and Domain
> Names, and expending or disbursing any corporate funds or property in favor of
> [Hillanbrand] or in favor of his representatives, agents or attorneys and/or
> otherwise acting in violation of [Goldstein and Pressman's] rights as shareholders
> of the Corporation
>
> 2)     interfering with, or making entries or deletions to, the corporate website
> and email system and/or otherwise preventing the Corporation from operating in
> the ordinary course of business; and
>
> 3)     disclosing confidential material and communications including the
> corporate financial books and records to be produced pursuant to BCL §1104-
> 1(c), client lists, trade secrets, account information, corporate computer software
> programs and/or any other corporate proprietary information or disclosure
> produced by [the Corporation, Goldstein and Pressman] in response to a demand
> by [Hillanbrand] or order of the Court, to any competitor or competing business,
> except as set forth herein or otherwise acting in violation of the rights of
> [Goldstein and Pressman] as shareholders of the Corporation . . . .

**The Defendants Interfere with the Plaintiff's Internet Presence and Create
Confusion in the Consumer Marketplace:**

63.     This, however, did not stop Hillanbrand.  Despite the TRO being in place,

Hillanbrand has still been interfering with and making entries and deletions to the Corporation's

website and social network platforms including LinkedIn.com and Facebook and/or otherwise preventing the Corporation from operating in the ordinary course of business.

64.     Specifically, the Plaintiff has recently discovered that the Defendants have improperly utilized and/or imbedded the Plaintiff's Amusitronix trade name keyword, Mark and/or website designation into its own LinkedIn.com profile, the WOW! website, and WOW!'s social network platform to redirect internet traffic to itself and intentionally confuse the public.

65.     To date, the Defendants continue to misappropriate Amusitronix's LinkedIn page and have manipulated the content, keywords, metatags and/or text to transform it into WOW!'s LinkedIn profile page.  Additionally, upon information and belief, the Defendants continue to improperly imbed as keywords, links or metatags and/or utilize the Amusitronix trade name, Mark and/or domain name within its LinkedIn page to redirect visitors to the WOW! website/company profile; causing confusion in the marketplace.

66.     Upon information and belief, LinkedIn has a strong algorithm in connection with the Google search engine and this improper misappropriation of the Amusitronix profile page causes anyone searching for Amusitronix to be redirected to the WOW! website, as the second entry on Google.  Amusitronix and WOW! are two separate companies and are not affiliated in any manner.  This misappropriation of the Mark, trade name keyword and Domain Name is designed to redirect internet traffic to WOW! to the detriment of Amusitronix.

67.     Upon information and belief, the Defendants have also removed and/or tampered with the LinkedIn profile pages of Goldstein and Pressman without authorization; unlawfully assumed and/or tampered with the employee designations and followers of Amusitronix and integrated them into the WOW! LinkedIn profile page, and plagiarized portions of the content/text of the Plaintiff's websites and social media profiles and incorporated it into their own website or social media profile pages.

14

68.     Additionally, during the pendency of the BCL Proceeding, Goldstein and Pressman discovered that on or about October 1, 2014, in addition to converting the Corporation's Domain Names to his personal account, Hillanbrand also purchased, in his own name, various other Domain Names through GoDaddy.com that are similar to "Amusitronix.com" including "Amusitronix.net", "Amusitronix.org", "Amusitronix.biz", "Amusitronix.co", "Amusitronix.mobi" and "Amusitronix.info" ("Similar Domain Names") and that since the issuance of the TRO, he has attempted to sell one or more of these Similar Domain Names at a public auction.

69.     These actions on the part of the Defendants were and continue to be clearly designed to confuse (and actually does confuse) and misdirect customers seeking Amusitronix's website and social network platform to WOW!'s LinkedIn page and website, while ensuring that WOW!'s customers are not confused. Moreover, the purchase of the Similar Domain Names serves no legitimate purpose other than to be used as leverage to extort payment from the Plaintiff for the anticipated transfer of same; to cause further confusion in the marketplace; or to, otherwise, permit Hillanbrand and/or the other Defendants to profit at Amusitronix's expense.

70.     The Amusitronix name and Mark is inherently distinctive and unique and through its continuous and extended use, it has come to signify, distinguish and be notoriously associated with the amusement equipment, software and virtual reality services provided by the Plaintiff, to the public.

71.     Pressgold, Inc. is the true owner of the Mark. Goldstein and Pressman first made use of the Mark in or about 1997 to identify its goods and services and they continue to use the Mark commercially, to date.

72.     The Plaintiff has invested significant resources into promoting and marketing the Mark. The "amusitronix.com" and "thevrguys.com" websites have received substantial web

traffic and when a consumer uses the popular Google® internet search engine to search for virtual reality entertainment and gaming, "Amustironix.com" is the first search result reported.

73.     As a result of successful marketing, promotion and operation of the Corporation under the name Amusitronix, significant goodwill has accrued under the Mark.

74.     Prior to filing this Complaint and in recognition of Amusitronix's exclusive rights in and to the Mark, the Plaintiff has filed a trademark application for Amusitronix.

75.     With its application, the Plaintiff submitted the required fees to the United States Patent and Trademark Office and the application is currently pending.

76.     Amusitronix has received a significant amount of unsolicited media exposure and press and even prior to registering the Mark, the Amusitronix trade name and Mark was sufficiently public to identify and distinguish the goods and services provided by the Corporation in the general public's mind.

77.     By using the Amusitronix trade name, Mark and Domain Names in its social media platform, WOW! is unfairly capitalizing on Amusitronix's reputation, brand, goodwill, and standing in the community and around the country.

78.     The Plaintiff has never given the Defendants permission to use the Amusitronix Domain Names, trade name or Mark for any purpose.

**The Defendants' Ignore Plaintiff's Cease & Desist Letter:**

79.     On or about January 30, 2015, the Plaintiff sent a cease and desist letter to WOW! demanding that it stop interfering with the online and social network sites of Amusitronix and infringing upon the Corporation's intellectual property rights.

80.     By letter dated February 2, 2015, Hillanbrand's counsel acknowledged notification of the cease and desist letter sent to Hillanbrand's current employer, WOW!

81.     Despite such demand, the Defendants have refused to stop using the Mark and Domain Names and infringing upon the Corporation's intellectual property rights in violation of various state, federal and common laws.

82.     The Defendants' obvious and willful intent to grow WOW! by trading on Amusitronix's trade name and Mark is a contemptuous, calculated attempt to confuse and divert existing customers and prospective customers to WOW! or to make them believe that WOW! is somehow affiliated, sponsored or approved by or otherwise associated with Amusitronix.

83.     The Defendants have intentionally competed in bad faith and used deceptive business practices to defraud the public into thinking that Amusitronix and WOW! are somehow affiliated.

84.     Irreparable harm has and will continue to occur as a result of this infringement because customers and prospective customers who are attempting to search for Amusitronix are being misdirected to its direct competitor, WOW!, and the mistaken perception is certain to damage Amusitronix's goodwill and hamper its efforts to maintain and develop the brand and reputation of the Mark in a manner than cannot be measured or quantified.

85.     The Defendants' use of the Domain Names, trade name and Mark have caused and, unless immediately enjoined, will continue to cause dilution of the distinctive quality of the Plaintiff's Mark because the Mark's capacity to identify and distinguish the Plaintiff's goods and services will be diminished and/or confused.

86.     Upon information and belief, Hillanbrand has profited from the conversion of the Corporation's Domain Names and the purchasing of the Similar Domain Names.

87.     Upon information and belief, the Defendants have profited from the misappropriation and infringement of the Corporation's Domain Names, trade name and Mark.

**FIRST COUNT**
**Federal Trademark Infringement, False Designation of Origin and/or Unfair Competition
Under the Lanham Act ,15 U.S.C. §1051 *et. seq.*
(As to all Defendants)**

88.    The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 87 of the Complaint as though fully set forth herein.

89.    The Plaintiff is the owner of the subject Domain Names and Mark.

90.    The Domain Names, trade name and Mark that the Defendants have used or are continuing to use and/or imbed in conjunction with their website and social media platform, including LinkedIn and Facebook, is the same, virtually identical and/or confusingly similar to the Amusitronix Domain Name and Mark, which is distinctive and associated in the mind of the public with the Plaintiff.

91.    The Defendants are not authorized to use the Plaintiff's Mark, trade name or Domain Names and they are utilizing the Domain Names and Mark with a bad-faith intent to profit from Amusitronix's reputation, brand and goodwill.

92.    The Defendants unauthorized use of the Mark, trade name and Domain Names has caused and will likely continue to cause confusion, mistake and deception in the marketplace; has caused or will cause the public to believe that the Mark or Domain Names emanates or originates from the Defendant, WOW!, when it does not; has caused or will cause the public to believe that the Plaintiff has authorized, sponsored, approved or otherwise associated itself with WOW!; and has unjustly enriched the Defendants.

93.    The Defendants unauthorized use of the Mark and Domain Names has resulted in the Defendants unfairly and illegally benefitting from the Plaintiff's reputation, brand recognition and goodwill.

94.    The Defendants' wrongful use of the Plaintiff's trade name, Mark and Domain Names was done knowingly, willfully, in bad faith and/or in gross reckless disregard for the

Plaintiff's rights. The Defendants' conduct was done with the purpose and intent of undermining the integrity and value of the Mark.

95.     The willful and illegal conduct of the Defendants constitutes unfair competition in that it offends public policy and is deceptive, oppressive, unethical, morally culpable, unscrupulous and causes injury to the consumer and general public alike.

96.     By making unauthorized use, in interstate commerce, of the Plaintiff's Mark, the Defendants have used a "false designation of origin" as it provides for in 15 U.S.C. §1125(a) of the Lanham Act, that is likely to cause confusion, mistake or deception as to the affiliation or connection between Amusitronix and WOW! and as to the origin, sponsorship, association or approval of the Defendants' goods and services by the Plaintiff.

97.     The Defendants attempt to divert the Plaintiff's consumers to a competitive website for commercial gain and with the intent to create likely and actual confusion, has caused substantial and irreparable injury to the Plaintiff, the public in general, the Plaintiff's Mark and the substantial goodwill represented thereby; thus the Plaintiff is entitled to damages in an amount yet to be determined together with costs, reasonable attorney's fees and any and all legal and equitable relief provided for under the Lanham Act.

98.     The Defendants have engaged in these activities willfully so as to justify the assessment of treble damages pursuant to 15 U.S.C. §1117.

99.     The activities of the Defendants herein constitute infringement of the Plaintiff's trademark rights, unfair competition and/or false designation of origin and are protected under the Lanham Act, 15 U.S.C. §1125(a).

100.     The Defendants' acts of infringement and unfair competition, unless permanently enjoined by this Court, have and will continue to cause Amusitronix to sustain irreparable damages, loss and injury, for which it has no adequate remedy at law.

**SECOND COUNT**
**Cybersquatting and Cyber Piracy Under the Anticybersquatting**
**Consumer Protection Act, 15 U.S.C. §1125(d)**
**(Against all Defendants)**

101.    The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 87 of the Complaint as though fully set forth herein.

102.    In addition to converting the Corporation's Domain Names to his personal account, Hillanbrand also purchased various other Domain Names through GoDaddy.com that are similar to "Amusitronix.com" including "Amusitronix.net", "Amusitronix.org", "Amusitronix.biz", "Amusitronix.co", "Amusitronix.mobi" and "Amusitronix.info", without the Plaintiff's authorization and consent, and he has attempted to sell one or more of them in the public marketplace.

103.    These Similar Domain Names expressly contain the Plaintiff's trade name and, therefore, are nearly identical and/or confusingly similar to the Plaintiff's Mark.

104.    The Plaintiff's Mark is distinctive and has achieved secondary meaning to the public within the virtual reality, amusement, entertainment and gaming community. The Defendants' use, imbedding and trafficking of the Plaintiff's Mark in its own website and social media platform was done with the bad faith intent to profit from the invaluable goodwill and reputation the Plaintiff has developed.

105.    Hillanbrand registered and is using or attempting to sell the Similar Domain Names with the bad-faith intent to profit from the Plaintiff's Mark and/or extort the Plaintiff into purchasing same from him.

106.    The Defendants have no *bona fide* noncommercial or fair use of the Plaintiff's Domain Names or the Similar Domain Names referencing the Plaintiff's Mark.

107.    Upon information and belief, the Defendants have utilized the Plaintiff's Domain Names within their own website and social media platform to divert consumers

away from the Plaintiff for unlawful commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the Domain Names and related email addresses.

108.    The Defendants attempt to traffic and divert the Plaintiff's consumers to the WOW! website and social media pages for commercial gain and/or the attempt to extort the Plaintiff or sell the Domain Names or Similar Domain Names for profit has caused and/or will cause the Plaintiff and the public irreparable harm.

109.    The Defendants' conduct has caused and will continue to cause injury to the Plaintiff's goodwill, brand and reputation, and this damage to the Plaintiff and the public will continue unless the Defendants are permanently enjoined by this Court, and the Domain Names and Similar Domain Names are ordered transferred to the Plaintiff.

110.    The Plaintiff has no adequate remedy at law and is thus damaged in an amount yet to be determined.   The Plaintiff is, therefore, entitled to damages in an amount yet to be determined together with costs, reasonable attorney's fees and any and all legal and equitable relief provided for under the Anticybersquatting Consumer Protection Act.

## THIRD COUNT
### Trademark Dilution Pursuant to the Lanham Act, 15 U.S.C. §1125(c)
### (Against All Defendants)

111.    The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 87 of the Complaint as though fully set forth herein.

112.    The Plaintiff's Mark is distinctive and notoriously associated with the virtual reality, entertainment and gaming goods and services Amusitronix provides.

113.    The Defendants' willful, intentional and wrongful use of the Mark as described herein has diluted and is diluting the distinctive and famous quality of the Mark.

114. By using the Mark in connection with WOW!' goods and services, the Defendants have caused and will continue to cause the Mark to lose its ability to serve as a unique identifier of Amusitronix's goods and services, resulting in dilution of the Mark by blurring.

115. By using the Mark in connection with WOW!'s goods and services, which are of inferior quality, the Mark has suffered and will continue to suffer garnishment and lose its ability to serve as an identifier of Amusitronix's goods and services.

116. The Defendants are willfully trading and intend to trade on Amusitronix's reputation and goodwill and to cause dilution of the distinctive quality of the Mark.

117. As a result of the foregoing, the Plaintiff has suffered irreparable harm and is entitled to preliminary and permanent injunctive relief enjoining the Defendants from continuing to use the Mark in connection with their LinkedIn profile, website and other social media platforms.

118. As a result of the foregoing, the Plaintiff has been injured and is entitled to damages in an amount to be determined at trial, which shall include the Defendants' profits and the Plaintiff's costs and attorney's fees together with any and all applicable legal and equitable damages under the law.

**FOURTH COUNT**
**Unlawful Interception and Disclosure of Electronic**
**Communications Pursuant to 18 U.S.C. §2511**
**(Against All Defendants)**

119. The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 87 of the Complaint as though fully set forth herein.

120. By misappropriating the Amusitronix LinkedIn profile and other social network platforms; modifying the content, text and code of such LinkedIn page and imbedding the Amusitronix Mark into WOW!'s website, LinkedIn page and other social network profiles; and

22

misdirecting traffic from Amusitronix.com to WOW!'s website, the Defendants have intentionally intercepted and/or endeavored to intercept electronic communications intended for the Plaintiff and/or procured another person or entity to intercept and/or endeavor to intercept electronic communications intended for the Plaintiff.

121.    The Defendants' acts are wrongful and will continue unless and until enjoined by this Court.

122.    The Defendants' acts have caused and will continue to cause irreparable injury to the Plaintiff.

123.    The Plaintiff has no adequate remedy at law and is, therefore, damaged in an amount to be determined at trial together with costs, reasonable attorney's fees and any and all legal and equitable relief provided for under the law.

**FIFTH COUNT**
**Deceptive Acts and Practices Unlawful in Violation of**
**New York General Business Law §349 and §350, *et. seq.***
**(Against All Defendants)**

124.    The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 87 of the Complaint as though fully set forth herein.

125.    The Defendants' misappropriation of the Plaintiff's LinkedIn profile and deletion of and/or tampering with Amusitronix's other shareholders' profile pages; wrongful use and imbedding of the Plaintiff's Mark in WOW!'s LinkedIn profile page, website and social network platform; false advertisement to the public that WOW! has assumed the employees and followers of Amusitronix through WOW!'s integration of the employees and followers of Amusitronix into the WOW! LinkedIn profile page; wrongful withholding of the Plaintiff's Domain Names, unjust procurement of the Similar Domain Names and the balance of the conduct set forth above constitutes deceptive acts and practices under New York General Business Law ("GBL") §349 and §350, *et. seq.*

126.    Through this unlawful behavior, the Defendants have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in confusion in the marketplace and injury to the consumers in New York.

127.    The Defendants' deceptive acts and practices as described herein are materially misleading and such acts and practices have deceived or have a tendency to deceive a material segment of the public to whom the Defendants have directed their activities.

128.    The Defendants' acts have caused, and will continue to cause, irreparable injury to the Plaintiff and the general public, and the Plaintiff has no adequate remedy at law.  As a result, the Plaintiff has been damaged.

129.    The Defendants' willful and deliberate acts have caused and will continue to cause irreparable injury to Amusitronix and the general public, and, unless enjoined will cause further irreparable injury, to which the Plaintiff has no adequate remedy at law.

130.    Thus, the Plaintiff has been damaged in an amount to be determined at trial together with costs, reasonable attorney's fees and any and all legal and equitable relief provided for under GBL §349 and §350, *et. seq.*

### SIXTH COUNT
### Injury to Business Reputation and Trademark Dilution
### Pursuant to New York General Business Law §360-1
### (Against All Defendants)

131.    The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 87 of the Complaint as though fully set forth herein.

132.    The Plaintiff's Mark is distinctive, unique and notorious within the meaning of GBL §360-1.

133.    The goods and services provided by Amusitronix and WOW! are similar and both companies compete for the same customer base, and trade show and industry events.

24

134.    The Defendants' wrongful conduct has caused dilution, blurring and/or tarnishment of the Plaintiff's Mark.

135.    The Defendants' conduct alleged above causes injury to the invaluable goodwill and business reputation of the Plaintiff and their Mark and creates the likelihood of dilution of the distinctive quality of the Mark in violation of GBL §360-1.

136.    The Defendants were without permission, license or consent of the Plaintiff to utilize said Mark, trade name or Domain Names, and unless enjoined by this Court, they will continue these practices and acts harming the Plaintiff and the Plaintiff's business reputation.

137.    The Defendants' willful and deliberate acts have caused irreparable injury to the Plaintiff's goodwill, brand and reputation and, as a result, the Plaintiff is entitled to damages in an amount to be determined at trial, which shall include the Defendants' profits and the Plaintiff's costs and attorney's fees together with any and all legal and equitable relief available under GBL §360-1.

## SEVENTH COUNT
### Trademark Infringement and Unfair Competition Under New York State Law
### (Against All Defendants)

138.    The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 87 of the Complaint as though fully set forth herein.

139.    The Plaintiff's Mark is distinctive and notorious.

140.    The Defendants' willful, intentional and wrongful use of the Plaintiff's Mark has caused confusion and misled and deceived the public as to the origin, sponsorship, nature, characteristics and qualities of the Plaintiff's business.

141.    The Defendants' conduct was done knowingly, willfully, in bad faith and/or in gross reckless disregard for the Plaintiff's rights.

25

142.    The Defendants' conduct was done with the specific purpose and intent of undermining the integrity and value of the Mark.

143.    The Defendants' conduct constitutes trademark infringement and unfair competition in violation of the Plaintiff's rights under New York State law.

144.    The Defendants were and continue to be unjustly enriched as a result of their conduct and wrongful actions.

145.    As a result of the foregoing, the Plaintiff has suffered irreparable harm and is entitled to preliminary and permanent injunctive relief enjoining the Defendants from continuing to use and/or imbed the Mark in connection with their website and social media platform.

146.    As a result of the foregoing, the Plaintiff has been injured and is entitled to damages in an amount to be determined at trial, which shall include the Defendants' profits and the Plaintiff's costs and attorney's fees together with any and all legal and equitable relief available under the law.

### EIGHTH COUNT
### Unjust Enrichment
### (Against All Defendants)

147.    The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 87 of the Complaint as though fully set forth herein.

148.    The Defendants' have been unjustly enriched by the actions and conduct set forth above and it would be against equity and good conscience to permit the Defendants to retain the profits and sales resulting from their wrongful conduct.

149.    In light of the foregoing, the Plaintiff is entitled to damages in an amount to be determined at trial together with costs and such other and further legal and equitable relief as deemed just and proper under the law.

### NINTH COUNT
### Breach of Fiduciary Duty
### (Against the Defendant, Stephen Hillanbrand)

150.    The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 87 of the Complaint as though fully set forth herein.

151.    Pursuant to New York law, Hillanbrand is and was at all relevant times a shareholder of Pressgold, Inc. d/b/a Amusitronix and the relationship of the shareholders of a closely-held Corporation is a fiduciary one. Thus, Hillanbrand owed the Plaintiff, Goldstein and Pressman a fiduciary duty to treat all shareholders equally and fairly and act in the best interests of the Corporation.

152.    By virtue of Hillanbrand's status as a shareholder of the Plaintiff, a closely held New York corporation, and the responsibilities the Corporation has bestowed upon him, the Plaintiff, Goldstein and Pressman reposed a high level of confidence and trust in him.

153.    Pursuant to New York law, as a shareholder of the Plaintiff, Hillanbrand owes the Plaintiff, Goldstein and Pressman, a fiduciary duty to act with candor, prudence, fairness, morality and honesty of purpose and to exercise good judgment in the management and/or operation of the Corporation.

154.    As a shareholder of a closely-held Corporation, Hillanbrand has a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Corporation and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

155.    Hillanbrand's status as a shareholder of the Plaintiff required him to devote his undivided, unqualified loyalty to the Corporation, and to not compete with it, or place his private interests in conflict with it, or personally profit from Amusitronix, at its expense. Hillanbrand failed to devote significant time to his position at Amusitronix, and breached his fiduciary duties

by taking employment with at least two other companies, including Kroger and Celio's Pizza, during the hours he should have been working for the Plaintiff.

156.    Hillanbrand, while engaged as a fiduciary of the Plaintiff, actively used his position and power within the Corporation to prevent Amusitronix from seeking certain business in competition with himself, Goldstein and Pressman. He also violated the Plaintiff's intellectual property rights by utilizing and/or imbedding Amusitronix's name, Mark and Domain Names within the WOW! website and social media platform to misdirect internet traffic to himself at WOW! in furtherance of his current employment and at the expense of Amusitronix.

157.    Hillanbrand abused and betrayed his fiduciary relationship with the Plaintiff, Goldstein and Pressman and the high level of trust the Corporation conferred upon him by: improperly causing confusion in the marketplace regarding the products and services offered by Amusitronix and WOW!; soliciting customers away from Amusitronix; sabotaging the Plaintiff's ability to conduct business by disabling the Corporation's email and telephone system by changing the access codes and passwords; violating their intellectual property rights and redirecting internet traffic to WOW!'s website and social media networks; misappropriating the Plaintiff's LinkedIn profile page and the pages of its shareholders; integrating the Plaintiff's employees and followers on LinkedIn to WOW!; usurping corporate opportunities from Amusitronix in favor of WOW! and otherwise willfully acting in bad faith to the detriment and damage of Amusitronix.

158.    By virtue of the misconduct and willful, bad faith actions set forth herein, Hillanbrand has breached his fiduciary duties to the Plaintiff, Goldstein and Pressman.

159.    As a result, the Plaintiff has sustained damages in an amount to be determined at trial together with costs and such other and further legal and equitable relief as deemed just and proper under the law.

**TENTH COUNT**
**Conversion**
**(Against the Defendant, Stephen Hillanbrand)**

160.    The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 87 of the Complaint as though fully set forth herein.

161.    Hillanbrand hijacked and misappropriated the Plaintiff's corporate website and Domain Names, disabled the corporate email system and effectively shut down the Corporation's website and ability to communicate and generate sales.

162.    Hillanbrand, without the authority or consent of the Plaintiff or its Board of Directors and unbeknownst to the other shareholders, Goldstein and Pressman, asserted control over Amusitronix's telephone system by changing the passwords and access codes and effectively prevented the Corporation from communicating with its personnel, clients and potential clients.

163.    Hillanbrand, without the authority or consent of the Plaintiff or its Board of Directors and unbeknownst to the other shareholders, Goldstein and Pressman, asserted personal control over the corporate Domain Names, registered them to himself personally, and excluded the Plaintiff, Goldstein and Pressman therefrom.

164.    Hillanbrand has effectively locked the Plaintiff, Goldstein and Pressman out the Corporation's website, misappropriated the Domain Names so that no additions, deletions or changes can be made, tampered with the telephone and email system and excluded the Plaintiff, Goldstein and Pressman from utilizing the equipment, space, materials and supplies of the Corporation in his possession.

165.    Hillanbrand has effectively stolen the Corporation's property and damaged and sabotaged Goldstein and Pressman's ownership interests in the Corporation.

166.    Hillanbrand's improper exercise of the rights of ownership over the Plaintiff's Domain Names, property, assets, communication systems, opportunities and business is inconsistent with Goldstein and Pressman's ownership rights to same and constitutes unlawful conversion of the Plaintiff's property.

167.    By virtue of the misconduct set forth herein, the Plaintiff has sustained serious, negative financial repercussions and damages and is entitled to return of the corporate assets together with damages in an amount to be determined at trial, costs and such other and further legal and equitable relief as deemed just and proper under the law.

## ELEVENTH COUNT
### Usurption of Corporate Opportunities
### (Against the Defendant, Stephen Hillanbrand)

168.    The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 87 of the Complaint as though fully set forth herein.

169.    Hillanbrand is and at all relevant times was a shareholder of the Plaintiff and was a high level employee of Amusitronix until his termination in September 2014.

170.    Hillanbrand, while employed for WOW!, a direct competitor of Amusitronix, knowingly, willfully and intentionally misappropriated business opportunities that properly belonged to Amusitronix, namely opportunities to contract with ABC Television, other prospective clients, and opportunities to continue contractual relations with current clients.

171.    As a fiduciary of Amusitronix, Hillanbrand had an obligation of undivided loyalty to undertake acts for the benefit of the Corporation, and not, in the same matter, act for himself or for his current employer, WOW!

172.    Due to the fiduciary relationship between Hillanbrand and Amusitronix, the Plaintiff had a legitimate interest and expectancy in the misappropriated business opportunities.

173.    Due to the prior business relationship between ABC Television and Amusitronix, the Plaintiff had the means to secure the contract for an event on ABC Television's daytime program, The View, and had a corporate interest or tangible expectancy that ABC would utilize their services for the event, and such business opportunities are essential to the Plaintiff's existence or logically and naturally adaptable to its business.

174.    As a fiduciary of Amusitronix, Hillanbrand diverted and exploited, for his own benefit and the benefit of Amusitronix's direct competitor, WOW!, opportunities that should be deemed assets of Amusitronix.

175.    The corporate opportunities misappropriated by Hillanbrand were essential to Amusitronix's line of business and would have positively impacted the financial position of Amusitronix.

176.    As a result of Hillanbrand's unauthorized diversion and usurpation of these corporate opportunities, the Plaintiff has been damaged in the form of lost sales, revenues and profits as well as a dimunition of its reputation, brand and goodwill.

177.    Accordingly, the Plaintiff is entitled to damages in an amount to be determined at trial, costs and such other legal and equitable relief as deemed just and proper under the law.

### TWELFTH COUNT
### Tortious Interference with Business Relations
### (Against the Defendant, Stephen Hillanbrand)

178.    The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 87 of the Complaint as though fully set forth herein.

179.    The Plaintiff had business relations with numerous customers and kept confidential records in the ordinary course of business, such as client lists and contact information, to further those relations.

180.    The Plaintiff also maintained successful websites, "amusitronix.com" and "thevrguys.com", and various social network platforms, which the Corporation had employed significant efforts to develop, promote and market, resulting in substantial goodwill and brand recognition within its business relations with current and potential customers.

181.    Hillanbrand, as a fiduciary of the Plaintiff, had access to and knowledge of Amusitronix's customer records, client lists, Domain Names and social media accounts, in his capacity as a shareholder and the Director of Sales for Amusitronix.

182.    While a fiduciary of the Plaintiff, Hillanbrand secured employment with, WOW!, a direct competitor of Amusitronix.

183.    While employed in such capacity, and without the consent or authorization of the Plaintiff, Goldstein and/or Pressman, Hillanbrand misappropriated the Corporation's client sales lists and the lists of corporate leads as well as the Plaintiff's LinkedIn page and various other social network profiles to induce Amusitronix's current and prospective customers into contracting with the direct competitor, WOW!

184.    By virtue of Hillanbrand's poaching of Amusitronix's customers, hijacking its LinkedIn profile page and other social media profile pages and imbedding the Amusitronix Mark, trade name and Domain Names into WOW!'s website and social media platform, the Plaintiff experienced irreparable interference with the business relations of its customers, prospective customers and the general public as a whole.

185.    Hillanbrand acted in bad faith and for a wrongful purpose in retaliating against the Plaintiff by misappropriating the Corporation's client lists and inducing the Corporation's customers to purchase goods and services from WOW! and in misdirecting Amusitronix online traffic to WOW!'s website and social media pages.  These actions have willfully interfered with

the business relations of Amusitronix and caused and continues to cause the Plaintiff irreparable damages and financial harm.

186.    Without consent or authorization of the Plaintiff, Goldstein and/or Pressman, Hillanbrand illegally and wrongfully transferred the Corporation's Domain Names into his name personally and proceeded to withhold the Domain Names from the Plaintiff leading to its inability to modify the content of its own websites.

187.    As a result of Hillanbrand's illegal and wrongful transfer of Amusitronix's Domain Names and misuse of such Mark and Domain Names in conjunction with WOW! social media platform, Hillanbrand substantially diminished the goodwill, reputation and brand recognition of Amusitronix, thereby causing irreparable interference on the Corporation's business relations with its customers, prospective customers and the general public.

188.    Hillanbrand employed dishonest, unfair, and improper means in interfering with the business relations of Amusitronix by abusing his fiduciary duties as a shareholder, deliberately hijacking the phone and email systems of Amusitronix, preventing Amusitronix from communicating with current and potential clients, illegally transferring the Corporation's Domain Names into his personal name, and refusing to return these corporate assets.

189.    As a result of Hillanbrand's illegal, wrongful, dishonest, unfair and improper acts, the Corporation's business relationships with its customers were irreparably injured and the Plaintiff is entitled to damages in an amount to be determined at trial, costs and such other and further legal and equitable relief as deemed just and proper under the law.

## DEMAND FOR RELIEF

**WHEREFORE,** the Plaintiff, PRESSGOLD, INC. d/b/a AMUSITRONIX, prays for:

A.     a FINAL JUDGMENT against the Defendants, STEPHEN HILLANBRAND, JOSEPH PARNETT and WOW ENTERTAINMENT, INC. d/b/a WOW! ENTERTAINMENT, acknowledging that:

> (1)     the Defendants have engaged in trademark infringement, false designation of origin and/or unfair competition pursuant to the Lanham Act ,15 U.S.C. §1051 *et. seq.*; and/or

> (2)     the Defendants have engaged in cybersquatting and/or cyber piracy in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(d); and/or

> (3)     the Defendants have engaged in trademark dilution pursuant to the Lanham Act, 15 U.S.C. §1125(c); and/or

> (4)     the Defendants have engaged in unlawful interception and disclosure of electronic communications pursuant to 18 U.S.C. §2511; and/or

> (5)     the Defendants have engaged in deceptive acts and practices unlawful in violation of New York General Business Law §349 and §350, *et. seq.*; and/or

> (6)     the Defendants have injured the business reputation and diluted the Plaintiff's Mark (as defined herein) in violation of New York General Business Law §360-1; and/or

> (7)     the Defendants have engaged in trademark infringement and unfair competition pursuant to New York State Law; and/or

> (8)     the Defendants have been unjustly enriched at the expense of the Plaintiff in violation of New York State common law;

B.     a FINAL JUDGMENT against the Defendant, STEPHEN HILLANBRAND, that:

> (9)     the Defendant, Hillanbrand breached his fiduciary duties to the Plaintiff in violation of New York law; and/or

> (10)     the Defendant, Hillanbrand, converted the Plaintiff's Domain Names and corporate assets in violation of New York law; and/or

> (11)     the Defendant, Hillanbrand, usurped corporate opportunities of the

Plaintiff in favor of himself and the Defendants, Parnett and Wow Entertainment, Inc. in violation of New York law; and/or

(12)   the Defendant, Hillanbrand, tortiously interfered with the business relations of the Plaintiff in favor of himself and the Defendants, Parnett and Wow Entertainment, Inc. in violation of New York law; and/or

(13)   the Defendant, Hillanbrand, is in breach of contract; and

C.   entry of an ORDER permanently enjoining and restraining the Defendants, and their officers, agents, representatives, servants, employees, attorneys, heirs, administrators and all those in active concert or participation with them, from:

(a)   using the Plaintiff's Mark (however spelled, whether capitalized, abbreviated, singular or plural, printed or stylized, whether used alone or in combination with any word or words and whether used in caption, text, orally or otherwise) or any other reproduction, counterfeit, copy, colorable imitation or confusingly similar variation of the Plaintiff's Mark, as a trade name, trademark, service mark, domain name or in any other manner which suggests in any way that the Defendants and/or their activities, products or services originate from, are affiliated with, or are sponsored, authorized, approved and/or sanctioned by the Plaintiff, or that the Plaintiff and its activities, products and services are affiliated in any way with the Defendants; and/or

(b)   infringing or diluting the Plaintiff's Mark; and/or

(c)   engaging in any course of conduct likely to cause confusion, deception or mistake in the minds of the public, or to injure the Plaintiff's business reputation, goodwill or brand; and/or

(d)   making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which may or is likely to lead the trade or public, or individual members thereof, to believe that any services offered by the Defendants are in any manner associated with or connected to the Plaintiff, or are sold, manufactured, licensed, sponsored, approved or authorized by the Plaintiff; and/or

(e)   utilizing or imbedding the Plaintiff's trade name, Mark or Domain Names within the Defendants' websites or social media platform in any manner or misappropriating and redirecting traffic from the Plaintiff's websites or social media platforms to the Defendants'

websites or social media platforms in any fashion; and/or

(f)     engaging in any course of conduct that would intercept electronic communications intended for the Plaintiff or its shareholders, directors, officers, customers and/or employees; and/or

(g)     engaging in acts of state, federal or common law trademark Infringement, unfair competition, misappropriate or dilution; and/or

(h)     inducing, encouraging, instigating, aiding, abetting or contributing to any of the aforesaid acts; and/or

(i)     effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purposes of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action; and

D.     for entry of an ORDER directing that the Defendants immediately cease use of the Plaintiff's Domain Names, trade name and Mark in any and all internet sites, social media platforms and all online or electronic advertising and marketing, including without limitation, metatags, metadata, imbedded links and/or keywords and that all internet sites and social media pages in violation of this Order be revised, at the Defendants' expense, as the Court shall direct, so that two companies, Amusitronix and WOW!, and their products and services are separate and distinct; and

E.     for entry of an ORDER directing that the Defendant, Hillanbrand, immediately cease use of the Plaintiff's Domain Names and the Similar Domain Names and transfer all of the Plaintiff's Domain Names, the Similar Domain Names and the Plaintiff's corporate assets still in the possession of Hillanbrand, back to the Plaintiff; and

F.     for an entry of an ORDER requiring that the Defendants disseminate corrective advertisements and/or online media announcements in a form approved by the Court to acknowledge the violations of the law hereunder and to ameliorate the false and deceptive impressions and confusion produced by these violations; and

G.     for an entry of an ORDER directing the Defendants to file with this Court and serve on counsel for the Plaintiff, within thirty (30) days after service on the Defendants of this Order, or within such time as the Court shall direct, a report, in writing and under oath, setting forth in detail the manner and form by which the Defendants have complied with this Order; and

H.     for an AWARD of the Defendants' profits and the Plaintiff's damages resulting from the Defendants' unlawful acts set forth herein, in an amount to be determined at the time of trial, and trebled, as applicable pursuant to 15 U.S.C. §1117(b), together with legal interest from the date of accrual thereof; and

I.     for an AWARD of statutory damages in an amount not less than $100,000.00 per domain name violation, pursuant to the Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(d); and

J.     for an AWARD of punitive damages of One Million ($1,000,000) Dollars or an amount to be determined at trial, as applicable, to deter the Defendants from further unlawful conduct; and

K.     for an AWARD of all statutory, compensatory, general and special damages, costs and attorneys' fees, as applicable under New York General Business Law §§349, 350, *et. seq.* and 360-1 and New York State common law, arising as a consequence of and/or attributable to the Defendants' wrongful acts, breaches, infringement, unfair competition, conversion and misconduct; and

L.     for an AWARD of statutory damages and the Plaintiff's costs and litigation expenses including reasonable attorneys' fees to the fullest extent, pursuant to 15 U.S.C. §1116 and §1117, as applicable; and

M.    for all such other and further relief as the Court may deem appropriate to prevent the Plaintiff from incurring further damage and/or the trade and the public from deriving any erroneous impression that any websites, domain names or goods and services offered by the Defendants are authorized, sponsored or approved by the Plaintiff or related in any way to the Plaintiff's products and services.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury of this action.

Dated: Tarrytown, New York
        February 6, 2015

MITCHELL POLLACK & ASSOCIATES, PLLC
Attorneys for Plaintiff, PRESSGOLD, INC. d/b/a
AMUSITRONIX

By.: _____
        Eileen M. Burger, Esq. (EB-3002)
        Mitchell B. Pollack (MP-7591)
        150 White Plains Road, Suite 310
        Tarrytown, New York  10591
        (914) 332-0700
        (914) 332-9191 (fax)
        eburger@mpollack.com
        mpollack@mpollack.com